**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE**

**CIVIL ACTION NO. 07-147-JBC**

**LYTTLE J. COMBS,**                                                                                 **PLAINTIFF,**

**V.**                                              **MEMORANDUM OPINION AND ORDER**

**MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,**                                      **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

        This matter is before the court upon cross-motions for summary judgment on

the plaintiff's appeal of the Commissioner's denial of his application for

Supplemental Security Income (DE 10, 11).  The court, having reviewed the record

and being otherwise sufficiently advised, will grant the plaintiff's motion and deny

the defendant's motion and will remand the case for further proceedings.

        **I.  Overview of the Process**

        Judicial review of the Administrative Law Judge's decision to deny disability

benefits is limited to determining whether there is substantial evidence to support

the denial decision and whether the Secretary properly applied relevant legal

standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th

Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)).  "Substantial

evidence" is "more than a scintilla of evidence, but less than a preponderance; it is

such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520. If it is determined during the process that the claimant is not disabled, then the analysis ceases at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

If a claimant is found disabled and awarded benefits, then the ALJ may determine if his disability continues through the date of the decision. *Myers v.*

2

*Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) (holding that the Commissioner "has the power to determine in a single hearing the issues of the fact of the claimant's disability, the extent of such disability, the duration of such disability and whether such disability has terminated").  In determining whether disability continues, the ALJ conducts a seven-step analysis.  At Step 1, the ALJ considers whether the claimant has an impairment or combination of impairments that meets or equals the severity of an impairment in the Listing of Impairments.  At Step 2, the ALJ determines whether there has been a medical improvement, and at Step 3, the ALJ considers whether any such improvement relates to the claimant's ability to do work.  If the ALJ finds no medical improvement related to the claimant's ability to work, then he must decide at Step 4 whether an exception to those requirements applies.  If the ALJ finds medical improvement related to the claimant's ability to perform work or that an exception applies, the ALJ determines at Step 5 whether the claimant's current impairments in combination are severe.  At Step 6, the ALJ assesses the claimant's current ability to engage in substantial gainful activity by considering the claimant's current RFC and deciding whether the claimant can return to past relevant work.  Finally, if the claimant cannot return to past relevant work, the ALJ, at Step 7, determines whether significant numbers of other jobs exist in the national economy which the claimant can perform based on his RFC, age, education, and past work experience.  20 C.F.R. § 416.994(b)(5).

**II.  The ALJ's Determination**

The claimant is a forty-six-year-old male with a master's degree in education and past work experience as a laborer, cashier, inspector, teacher, and coal mine helper.  AR 81.  The claimant alleges disability beginning on October 17, 2001, as a result of discogenic and degenerative disorders of the back and chronic low back pain with post-operative residuals.  AR 19, 63.  The plaintiff filed an application for Supplemental Security Income ("SSI") on August 12, 2003, which was denied initially and on reconsideration.  AR 16.  After hearings held on February 27, 2006, and August 1, 2006, Administrative Law Judge ("ALJ") Charles J. Arnold issued a partially favorable decision.

The ALJ first determined that the plaintiff was disabled from August 12, 2003, through May 10, 2006.  AR 16-23.  At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity.  At Step 2, the ALJ found that the claimant's status post discectomy L4-S1, radicular pain, cervical degenerative joint disease, and bulging disc were severe impairments.  AR 19.  The ALJ then determined at Step 3 that the claimant's impairments did not meet or equal a listing in the Listing of Impairments.  At Step 4, the ALJ found that the plaintiff was unable to perform his past relevant work.  The ALJ concluded at Step 5 that from August 12, 2003, through May 10, 2006, considering the claimant's age, education, work experience, and RFC, there were no jobs that existed in the national economy that the claimant could have performed.  AR 19-21. Thus, the

4

claimant was under a disability as defined by the Social Security Act from August
12, 2003, through May 10, 2006.

The ALJ then considered whether the plaintiff had experienced medical
improvement and determined that the claimant's disability ended on May 10, 2006.
AR 16, 21-23.  At Step 1, the ALJ found that the claimant did not have an
impairment or combination of impairments listed in, or medically equal to one listed
in, the Listing of Impairments.  At Steps 2-4, the ALJ found that the claimant
experienced medical improvement and that the improvement was related to his
ability to work.  At Step 5, the ALJ found that the claimant had severe
impairments.  The ALJ determined that the claimant had the RFC, beginning on
May 10, 2006, to perform a broad range of light work activity with some
limitations.  AR 21.   At Step 6, the ALJ found that the claimant was not capable
of returning to past relevant work.   At Step 7, the ALJ found, given the claimant's
RFC, age, education, and work experience, that he was capable of performing work
that exists in significant numbers in the national economy.  AR 22.  Thus, the ALJ
found the claimant was not under a disability as defined by the Social Security Act
from May 10, 2006, through the date of the ALJ's decision.  On May 2, 2007, the
Appeals Council denied the plaintiff's request for review of the ALJ's decision, *see*
AR 8-10, and the plaintiff then commenced this action.

### III.  Legal Analysis

The claimant argues that the ALJ's finding of medical improvement is not

supported by substantial evidence.  Additionally, the claimant asserts that there is not substantial evidence that he has the ability to engage in substantial gainful activity.  If substantial evidence supports the ALJ's determinations, then the claimant's benefits were correctly terminated.

In a cessation-of-benefits case, the issue is whether the claimant's medical impairments have improved to such an extent that he is able to perform substantial gainful activity. 42 U.S.C. § 423(f); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Once it is determined that a claimant is eligible for disability benefits, the ALJ may consider whether the disability continues.  If there has been any medical improvement in a claimant's impairments and that improvement relates to the claimant's ability to work, then he may no longer be disabled. 20 C.F.R. § 416.994(b).  Although the ALJ found the claimant disabled for a period of time, the claimant is not entitled to a presumption of continuing disability. *Cutlip*, 25 F.3d at 286.  Rather, "the decision to terminate benefits must be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.*  Before terminating benefits, the Commissioner must, in most cases, show that the claimant is currently able to engage in substantial gainful activity.  20 C.F.R. § 416.994(b).

6

**A. Medical Improvement**

"Medical improvement is any decrease in severity of [the claimant's] impairment(s) which [were] present at the time of the most recent favorable medical decision that [the claimant was] disabled." 20 C.F.R. § 416.994(b)(1)(I). The ALJ determined that the claimant was disabled and then found, in the same decision, that the claimant had experienced medical improvement prior to the date of the ALJ's decision.  "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.*

The ALJ found that medical improvement occurred as of May 10, 2006, based on the medical record, specifically referring to the evaluation completed by Dr. Stephen Nutter on that date.  The claimant argues that the ALJ's summary of Dr. Nutter's evaluation was incomplete.

1.  Dr. Nutter's May 10, 2006, Evaluation

The only medical evidence in the record for the period between May 10, 2006, and the date of the decision, appears to be the examination report by Dr. Nutter, dated May 10, 2006, AR 225-34, and the surgical procedure note from Dr. Robert E. Windsor following an epidural injection on June 5, 2006.  AR 237-38.

Dr. Nutter performed a consultative physical evaluation purchased by the Kentucky Disability Determination Division.  According to the ALJ, the May 10, 2006, exam "revealed degenerative disc disease, but no physical limitations.  He

had a negative straight leg raising rest, a full range of motion, could stand on one foot, could sit, stand, and walk without difficulty, and had full strength." AR 20 (citing Exhibit 12F, which is identified in the list of exhibits as AR 225-34). In finding that medical improvement occurred as of May 10, 2006, the ALJ stated that the medical record showed that "the claimant had a full range of motion, no physical limitations, and showed a capacity for light work activity." AR 21.

A review of Dr. Nutter's evaluation shows that the ALJ's brief, conclusory statements do not accurately summarize the doctor's findings. When examining the claimant's lower extremities, Dr. Nutter noted pain and tenderness in the right knee, but not the left knee. He found crepitus in both knees. AR 227. The examination of the cervical spine revealed pain and tenderness to the paraspinal muscles in certain areas and throughout the lumbar spine. AR 227-28. He stated that "[t]he claimant complains of pain in the back with range of motion testing of the hips and lumbar spine." AR 228. With regard to muscle strength, Dr. Nutter stated it was normal at 5/5 bilaterally in the upper and lower extremities, except for the right knee which was limited to 3/5 due to complaints of knee pain. AR 228. At the examination, the claimant was able to perform tandem gait but could not squat due to back and knee pain. AR 228. Dr. Nutter stated that his impression included: (1) "Chronic cervical and lumbosacral strain with degenerative disc disease and history of prior back surgery" and (2) "Posttraumatic and degenerative arthritis." AR 228. In summary, Dr. Nutter found the claimant

8

had pain and tenderness of the cervical and lumbar spine with decreased range of motion as noted.  Straight leg raise test was negative.  Grip strength, fine manipulation skills, and sensory modalities were intact.  Muscle strength testing was intact with exception of limitations of the knee due to pain.  There is no definite evidence of nerve root compression on exam today.  He could not squat because of back and knee pain.

The patient reports knee pain.  He had pain, tenderness, and crepitus in the right knee with decreased range of motion of the right knee.

AR 228.  At the examination with Dr. Nutter, the claimant reported that he was in constant back pain and that the pain radiated down his right leg.  AR 225.  The claimant further told the doctor that his back pain was aggravated by bending, stooping, sitting, lifting, standing, coughing, and riding in a car.  *Id.*  Dr. Nutter's evaluation does not support the ALJ's finding that the claimant had full range of motion with no physical limitations.  When compared with the previous medical evaluations in the record, it also appears that the ALJ's specific findings used to support a new RFC after May 10, 2006, were not actual medical improvements.

_____      2. Other Medical Evidence

On March 10, 2006, Dr. Windsor noted that the claimant's range of motion in his right knee was full but painful with moderate crepitus noted on palpation during range of motion.  AR 250.  Dr. Windsor also stated that the claimant's muscle testing revealed 5/5 strength through both upper and lower extremities.  AR 249.  The claimant's movement of his cervical spine appears to have actually reduced rather than improved when a January 29, 2004, examination is compared

with Dr. Nutter's findings.[1]  During that same 2004 examination, Dr. Kidd found that the claimant "appears stable at station and comfortable in the supine and sitting positions," and that he could "walk on the heels and toes, perform tandem gait and he can only do 3/4 of a squat due to back pain."  AR 135, 137.  Those findings are the same as Dr. Nutter's later findings, except that the claimant could not perform any squat in 2006 due to back and knee pain.  AR 226, 228.  On February 16, 2004, Dr. Kenneth Phillips found, among other things, that the claimant had positive straight leg raising on the left at 35 to 40 degrees but negative straight leg raising on the right, and that the claimant had full range of motion of the back.  AR 151-53.

Dr. John T. Rawlings completed an RFC assessment on August 17, 2004. AR 188-93.  This evaluation was after the claimant's motor vehicle accident on February 17, 2004, which aggravated his back and neck pain.  AR 194.  Dr. Rawlings found that the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about 6 hours in an 8-hour workday

---

[1] Dr. Bobby Kidd found the following based on his examination of the claimant's cervical spine on January 29, 2004: "Examination of the cervical spine reveals no tenderness over the spinous processes. . . . The cervical spine allows 45 degrees of flexion and extension.  Lateral bending is to 40 degrees bilaterally. Rotation of the cervical spine is to 80 degrees bilaterally."  AR 136.  In contrast, Dr. Nutter's findings on May 10, 2006, were as follows: "Examination of the cervical spine reveals pain and tenderness to the paraspinal muscles from C3 to C7, more so on the right than the left and the spinous processes in the cervical spine. . . . The cervical spine allows 45 degrees of flexion and 45 degrees of extension, 35 degress of right lateral bending and 40 degrees to the left, and 80 degrees of rotation bilaterally."  AR 227.

and sit about 6 hours in an 8-hour workday; and was limited in the upper and lower

extremities as to his ability to push and/or pull.  AR 189.  That evaluation in 2004

actually imposed fewer restrictions on the claimant than Dr. Nutter's RFC

assessment that accompanied his May 10, 2006, evaluation.  Dr. Nutter found the

same restrictions for lifting/carrying and pushing/pulling as Dr. Rawlings, but limited

the claimant to standing and/or walking "at least 2 hours in an 8-hour workday,"

and sitting "less than about 6 hours in an 8-hour workday."  AR 230-31.  Dr.

Nutter actually limited the claimant's sitting time to what appears to be 4 hours, by

writing a note on the form.  *Id.*

    For the period during which the ALJ found the claimant disabled, the ALJ

found the claimant had the RFC to perform less than a full range of sedentary work

activity.  AR 20.  The ALJ further stated that the claimant "had degenerative

arthritis of the cervical and lumbar spine with disc bulge, limiting the claimant's

ability to sit, stand, and walk for extended periods, concentrate due to pain, bend,

climb, kneel, and squat." *Id.*  However, beginning on May 10, 2006, the ALJ

found the claimant had the RFC "to perform a broad range of light work activity

with free ability to alternate positions, no climbing, crouching, or crawling, and

limited to occasional balancing, kneeling, and stooping." AR 21.  The various

medical evaluations in the record do not support these changes in the RFC.  The

ALJ's basis for finding medical improvement and thus for the changes in the

claimant's RFC appears to be largely his credibility findings.

11

### 3.  Credibility Findings

With regard to the claimant's allegations of pain, the ALJ found him credible during the period of disability, but determined that he was not credible beginning May 10, 2006.  In finding the claimant disabled, the ALJ stated that "[f]rom August 12, 2003 through May 10, 2006, the claimant's statements concerning the limiting effects of his symptoms are *generally credible*.  The claimant had degenerative arthritis of the cervical and lumbar spine with disc bulge, limiting the claimant's ability to sit, stand, and walk for extended periods, concentrate due to pain, bend, climb, kneel, and squat."  AR 20 (emphasis added).  With those findings, the ALJ decided that the claimant had the RFC to perform less than a full range of sedentary work activity for the period from August 12, 2003, through May 10, 2006.  AR 20.

In reaching the claimant's new RFC following his finding of medical improvement, the ALJ noted that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible beginning on May 10, 2006." AR 22.  An ALJ must state his reasons for finding that a claimant's testimony is not credible.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).  Although a reviewing court must give deference to the ALJ's credibility findings, the ALJ did not state any reasons for his findings regarding the claimant's credibility and

12

specifically did not give any reasons for changing his view of the same claimant's credibility for the time periods prior to and then after May 10, 2006.

**B.  Substantial Evidence**

Substantial evidence does not exist to support the ALJ's decision that the claimant experienced medical improvement.  The court finds that the ALJ's decision at step two of the process for terminating benefits is not supported by substantial evidence.  Thus, it is not necessary to review the ALJ's subsequent findings or the claimant's additional arguments.  The ALJ found the claimant disabled for a closed period; thus, the record clearly establishes the claimant's disability and there is no reason to remand for a determination of disability.  However, the process to terminate a claimant's benefits includes steps beyond a finding of medical improvement, including whether exceptions apply that would require a termination of benefits without any improvement in the claimant's impairments.  The court does not have the information necessary to complete that process.  Therefore, the court will reverse the Commissioner's decision insofar as it found medical improvement and ended the claimant's disability as of May 10, 2006, and direct that the case be remanded for further proceedings consistent with this opinion.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 11) is **DENIED**.

13

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's decision is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

Signed on  September 29, 2008

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

14